IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SEVEN SIGNATURES GENERAL PARTNERSHIP, | ) ) ) | CIVIL NO. 11-00500 JMS-RLP |
| Petitioner, | ) ) ) | SECOND AMENDED FINDINGS AND RECOMMENDATION REGARDING RESPONDENT IRONGATE AZREP BW |
| vs. | ) ) | LLC'S BILL OF COSTS AND MOTION FOR AN AWARD OF ATTORNEYS' FEES |
| IRONGATE AZREP BW LLC, | ) ) | AND NON-TAXABLE COSTS |
| Respondent. | ) ) | |
| _____ | ) | |

SECOND AMENDED[1] FINDINGS AND RECOMMENDATION REGARDING RESPONDENT
IRONGATE AZREP BW LLC'S BILL OF COSTS AND MOTION FOR AN AWARD
OF ATTORNEYS' FEES AND NON-TAXABLE COSTS[2]

Two matters are before the Court:  (1) Irongate's Bill

of Costs; and (2) Irongate's Motion for an Award of Attorneys'

Fees and Non-taxable Costs ("Motion").  Irongate requests $641.65

in costs, $44,426.34 in attorneys' fees, and $75.17 in non-

taxable costs as the "prevailing party" pursuant to the Court's

---

[1] The original Findings and Recommendation Regarding
Respondent Irongate Azrep BW LLC's Bill of Costs and Motion for
an Award Of Attorneys' Fees and Non-taxable Costs, which was
filed on April 13, 2012 [Docket No. 41] contained typographical
errors related to the reasonable hourly rate for Mr. Lautenbach
and the total fee awarded.  This Second Amended Findings and
Recommendation corrects those errors.  In all other respects,
this Second Amended Findings and Recommendation is the same as
the original.

[2] Within fourteen days after a party is served with a copy
of the Findings and Recommendation, that party may, pursuant to
28 U.S.C. § 636(b)(1)(B), file written objections in the United
States District Court.  A party must file any objections within
the fourteen-day period allowed if that party wants to have
appellate review of the Findings and Recommendation.  If no
objections are filed, no appellate review will be allowed.

Order (1) Denying Seven Signatures General Partnership's Motion to Compel Arbitration; and (2) Granting Respondent Irongate Azrep BW LLP's Motion to Dismiss Petition for Order Compelling Mediation/Arbitration, or, in the Alternative, for Summary Judgment, filed on January 18, 2012 ("January 18 Order"). See Docket No. 25. The Court found these matters suitable for disposition without a hearing pursuant to Local Rule 7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii. See Docket No. 29. After careful consideration of the Bill of Costs, the Motion, the supporting and opposing memoranda, declarations, and exhibits attached thereto, and the record established in this action, the Court FINDS AND RECOMMENDS that Irongate's Bill of Costs be GRANTED IN PART AND DENIED IN PART and its Motion be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that Irongate be awarded $482.93 in costs, $25,400.51 in attorneys' fees, and $67.01 in non-taxable costs, for a total award of $25,950.45.

BACKGROUND

The parties and the Court are familiar with the factual and procedural background of this case, which are discussed in detail in the Court's January 18 Order. The Court will only address the background relevant to the Bill of Costs and Motion.

Seven Signatures General Partnership ("Seven Signatures") filed a Petition to compel Irongate to mediate or

2

arbitrate a dispute regarding the enforcement of the Sales
Contract executed by the parties on November 10, 2006 ("Sales
Contract").  Docket No. 1, Ex. 1.  As the court stated in its
January 18 Order, resolution of that issue implicated two
different agreements between the parties:  (1) the Sales
Contract; and (2) the Master Settlement Agreement ("MSA").  Jan.
18 Order at 2, 8.  The Sales Contract required arbitration of
disputes; the MSA did not.  Id. at 16.  In its Petition and
motion to compel, Seven Signatures asserted that the Sales
Contract controlled and thus the parties were required to
arbitrate their dispute.  Id. at 16-17.  Irongate opposed the
motion to compel and filed a motion to dismiss or in the
alternative for summary judgment as to the issues raised in the
Petition arguing that the MSA controlled and arbitration was not
required.  Id.  The court examined both agreements and concluded
that the MSA controlled any dispute regarding Irongate's
termination of the Sales Contract.  Jan. 18 Order at 29.
Accordingly, the court held that any dispute regarding Irongate's
termination is not subject to arbitration.  Id. at 28-29.  The
court denied Seven Signature's motion to compel and granted
Irongate's motion for summary judgment.  Id. at 29.  The Clerk of
Court filed a Judgment in a Civil Case, and the case was
dismissed.  See Docket No. 26.  The Bill of Costs and Motion
followed.

## I.  Bill of Costs

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  Under Local Rule 54.2(a), "the prevailing party in whose favor judgment is entered" is the party entitled to taxable costs.  LR 54.2(a).  Here, Irongate prevailed on its motion for summary judgment, and judgment was issued in its favor.  <u>See</u> Docket Nos. 25, 26.  Accordingly, Irongate is the "prevailing party" and is entitled to its costs under Rule 54(d)(1).  Rule 54 creates a strong presumption in favor of awarding costs to the prevailing party.  <u>See</u> <u>Miles v. Cal.</u>, 320 F.3d 986, 988 (9th Cir. 2003).  To overcome this presumption, the losing party must "establish a reason to deny costs."  <u>Dawson v. City of Seattle</u>, 435 F.3d 1054, 1070 (9th Cir. 2006).

Here, Irongate seek $641.65 in costs:  filing fees of $350.00 and photocopy costs of $291.65.  Bill of Costs, Docket No. 28.  To support the requested filing fees, Irongate attached a receipt reflecting the cost.  <u>See</u> Ex. B to Aff. of Andrew Lautenbach submitted in support of Bill of Costs ("Lautenbach Aff.").  The Court finds that these costs are taxable.

To support the requested photocopy costs, Irongate submitted a table showing:  the date each document was copied; a description of each document copied; the number of copies made;

the number of pages in each document; and the total number of pages copied as required by Local Rule 54.2(f)(4). Ex. A to Lautenbach Aff. Irongate requests (1) $0.15 per page for regular copies and (2) $1.00 per page for color copies. Lautenbach Aff. ¶ 3. First, Irongate requests costs for 1171 pages of regular copies at $0.15 per page. Id. Based on the table provided, it appears that 569 pages of regular copies requested were copies for "Defendants' file." See Ex. A to Lautenbach Aff. Local Rule 54.2(f)(4) specifically states that "[t]he cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not taxable." LR 54.2(f)(4). The cost for these 569 pages is not taxable. Irongate is only entitled to costs for 602 pages of regular copies at $0.15 per page ($90.30). Second, Irongate requests costs for 116 pages of color copies at $1.00 per page. Lautenbach Aff. ¶ 3. Irongate was required by the court to submit color copies of its supplemental exhibits. See Docket No. 24. However, the $1.00 per page requested by Irongate is not reasonable. Local Rule 54.2(f)(4) provides that the practice of this court is to allow $0.15 per page in copying costs. LR 54.2(f)(4). Although it is reasonable to expect that the cost of color copies is more than regular copies, Irongate provides no support for its requested $1.00 per page. Seven Signatures contacted a commercial copier and was quoted a price of $0.49 per page for color copies. Decl.

of Connie C. Chow submitted in support of Seven Signatures'
Objection to Irongate's Request for Taxation of Cost ¶ 4.  The
Court finds that $0.49 per page for color copies is reasonable.
Also, as noted above, Irongate is not allowed costs for copies
made for its files.  See LR 54.2(f)(4).  Accordingly, the Court
finds that Irongate is entitled to costs for 87 pages of color
copies at $0.49 per page ($42.63).  In total, the Court
RECOMMENDS that the costs be taxed against Seven Signatures and
in favor of Irongate in the amount of $482.93.

**II.  Attorneys' Fees**

In diversity cases, the Court must apply state law in
determining whether the prevailing party is entitled to
attorneys' fees.  Kona Enters., Inc. v. Estate of Bishop, 229
F.3d 877, 883 (9th Cir. 2000); See Notice of Removal ¶¶ 3-6
(asserting jurisdiction under 28 U.S.C. § 1332).  Under Hawaii
law, "[o]rdinarily, attorneys' fees cannot be awarded as damages
or costs unless so provided by statute, stipulation, or
agreement."  Stanford Carr Dev. Corp. v. Unity House, Inc., 141
P.3d 459, 478 (Haw. 2006) (citing Weinberg v. Mauch, 890 P.2d
277, 290 (Haw. 1995)).  Here, Irongate seeks an award of fees
under Hawaii Revised Statutes section 607-14.  Section 607-14
provides that attorneys' fees shall be awarded "in all actions on
a . . . contract in writing that provides for an attorney's fee."
Haw. Rev. Stat. § 607-14; see also Sheehan v. Centex Homes, Civil

No. 10-00695 SOM-RLP, 2011 WL 3678927 (D. Haw. July 27, 2011)
(awarding attorneys' fees under section 607-14 to the defendant
who prevailed on a motion to compel arbitration in an action
under a sales contract that provided for an award of attorneys'
fees). Section 607-14 also provides that such fees shall "not
exceed twenty-five per cent of the judgment." Haw. Rev. Stat.
§ 607-14. To award attorneys' fees under 607-14, the court must
determine whether: (A) the action is on a contract in writing
that provides for attorneys' fees; (B) Irongate is the prevailing
party; (C) the fees requested are reasonable; and (D) the fees do
not exceed twenty-five percent of the judgment.

**A.  Action on a Contract that Provides for Attorneys'
Fees**

Irongate asserts that it is entitled to fees because
this action was on a contract that provides for attorneys' fees.
Mem. in Supp. of Mot. at 4-7. Specifically, Irongate asserts
this action involved the Sales Contract and the MSA and that both
contracts provide for an award of attorneys' fees. Id.

**1. Sales Contract**

Irongate argues that the Sales Contract provides for an
award of attorneys' fees. Id. at 6. In support of its
contention, Irongate points to the following provision:

> D(39)f. <u>NO JUDICIAL INTERVENTION</u>. THE PARTY
> BRINGING ANY LITIGATION NOT PERMITTED UNDER
> THESE PROCEDURES SHALL BE RESPONSIBLE FOR ALL
> REASONABLE EXPENSES AND FEES (INCLUDING THOSE

7

OF ATTORNEYS, EXPERTS, AND OTHER
PROFESSIONALS) INCURRED BY THE OTHER PARTY AS
A RESULT OF SUCH PROHIBITED LITIGATION.

Id. (quoting Sales Contract at D.39.f). Irongate acknowledges
that the January 18 Order held that the Sales Contract does not
apply to the parties' underlying dispute, but argues that this
provision of the Sales Contract should still apply to its request
for an award of fees. Id. Irongate asserts that this provision
of the Sales Contract contemplates an award of fees for a party
that succeeds in compelling arbitration; therefore, it must also
be construed to provide an award of attorneys' fees to a party
that successfully defends against a motion to compel arbitration.
Id.

The Court is not persuaded by Irongate's argument that
the Sales Contract entitles it to an award of attorneys' fees.
First, the January 18 Order expressly held that the MSA
superseded the Sales Contract regarding the issues addressed in
the MSA. See Jan. 18 Order at 27 ("the parties' intent was to
have the MSA supersede any prior agreements regarding the issues
addressed in the MSA, which includes the closing on Unit 3509.
The court therefore rejects that the parties did not intend to
supplement the terms of the Sales Contract through the MSA.").
The MSA has two provisions, discussed in detail below, that
address the parties' obligations related to attorneys' fees. See
MSA ¶¶ 4, 9. For the same reasons outlined in the January 18

Order, the Court finds that the terms of the MSA that address attorneys' fees supercede the corresponding terms of the Sale Contract.  See Jan. 18 Order at 19.

Second, even assuming the Sales Contract applied, the Court finds that the terms of the Sales Contract's fees provision are not applicable to this action.  The provision states that the party that brings "any litigation not permitted under these [alternative dispute resolution] procedures" is responsible for fees incurred as a result of the "prohibited litigation."  Sales Contract at D.39.f.  This action was brought by Seven Signatures to enforce the alternative dispute resolution procedures of the Sales Contract pursuant to Hawaii Revised Statutes Chapter 658A, which is expressly contemplated under section D.39.g of the Sales Contract.  See id. at D.39.g (providing that the parties are not prevented from disclosing "information necessary to support a motion under Chapter 658A of the Hawaii Revised Statutes.").  This action was not "prohibited litigation" as defined under the terms of the Sales Contract allowing for attorneys' fees.  Therefore, the Court concludes that Irongate is not entitled to attorneys' fees under the Sales Contract.

## 2.  MSA

Irongate also argues that it is entitled to an award of attorneys' fees based on the MSA.  Mem. in Supp. of Mot. at 4-5.  Two provisions of the MSA address attorneys' fees.  First,

Paragraph 4 of the MSA contains a "Mutual Release and Limited Indemnity" clause. The portion of this clause regarding Seven Signatures' obligations provides:

> Seven Signatures . . . and Irongate . . . mutually release and/or waive all claims, whether known or unknown, against each other related to units that are terminated by way of this Agreement.
>
> * * *
>
> Seven Signatures will indemnify, defend and hold harmless Irongate and its officers, employees, members, affiliates and lenders from claims or lawsuits asserted by Seven Signatures or its officers, employees or affiliates including its lenders, equity partners or related entities based on claims that have been released and claims or lawsuits by third parties that are in privity with Seven Signatures and/or its affiliates regarding units that are terminated by way of this letter, resulting from the conduct, representations and/or actions of Seven Signatures.

MSA ¶ 4. Essentially, Paragraph 4 provides that Seven Signatures has a duty to defend Irongate from any lawsuits asserted by Seven Signatures based on claims related to units that are terminated under the MSA. Id. Second, Paragraph 9 of the MSA provides: "Irongate and Seven Signatures will each bear their own attorneys' fees and costs." Id. ¶ 9. The Court must reconcile the duty to defend obligation in Paragraph 4 with the statement in Paragraph 9 that each party must bear its own attorneys' fees and costs.

**a. Paragraph 9: Each Party to Bear its own Fees and Costs**

Irongate argues that Paragraph 9 regarding fees and costs "refers only to attorneys' fees and costs that were incurred in the negotiation and drafting of the MSA." Mem. in Supp. of Mot. at 5 n.2. Irongate asserts that the parties' agreement regarding fees and costs for subsequent disputes, including the instant action, is reflected in Paragraph 4 regarding indemnity and defense. Reply at 4. Seven Signatures does not address Irongate's assertion that Paragraph 9 was intended to apply only to the fees and costs associated with negotiating and drafting the MSA. <u>See</u> Opp. at 7. Instead, Seven Signatures argues that Paragraph 9 applies because "[t]here is no other provision in the MSA regarding fees and costs." <u>Id.</u>

In interpreting a contract, the court should avoid interpretations that would render any provision meaningless. <u>Stanford Carr Dev. Corp.</u>, 141 P.3d at 470 (citations omitted). Seven Signatures' argument that Paragraph 9 is the only provision regarding attorneys' fees ignores the duty to defend provision in Paragraph 4. If the parties intended for each party to bear its own costs and attorneys' fees under all circumstances, including future litigation asserted by the parties against one another, then the duty to defend provision in Paragraph 4 would be rendered meaningless. Irongate's interpretation gives effect to

both provisions.  The Court finds that Paragraph 9 does not preclude an award of attorneys' fees if the duty to defend is triggered under Paragraph 4.

### b.  Paragraph 4:  Seven Signatures' Duty to Defend

Irongate asserts that the duty to defend outlined in Paragraph 4 of the MSA entitles it to attorneys' fees under section 607-14.  Under Paragraph 4 of the MSA, Seven Signatures agreed to pay the cost of defense, which includes attorneys' fees and costs, for any suit brought by Seven Signatures against Irongate related to the units terminated by the MSA.  MSA ¶ 4. Seven Signatures argues that its duty to defend has not been triggered therefore Irongate is not entitled to attorneys' fees. Opp. at 7-8.  As an initial matter, the Court notes that this provision was specifically negotiated by both parties[3] and "[i]t is the duty and responsibility of the courts, not to re-write contracts according to their own views of what is practical and fair, but to enforce them in accordance with the evidence and recognized principles of law."  United States v. Bethlehem Steel Corp., 315 U.S. 289, 310 (1942).

Under Hawaii law, a contractual duty to defend in a non-insurance context is interpreted according to the same principles as insurance contracts.  See Pancakes of Haw. v.

---

[3] As noted in the January 18 Order, the parties agreed that the MSA was drafted jointly by the parties.  Jan. 18 Order at 8 n.3.

<u>Pomare Props. Corp.</u>, 944 P.2d 83, 88 (Haw. Ct. App. 1997) (noting that this interpretation "is the only equitable interpretation that gives life to non-insurance indemnity clauses and prevents indemnitors from benumbing the duty to defend until after a case has been litigated."); <u>see also</u>, <u>Shaughnessy v. KC Rainbow Dev. Co. LLC</u>, Civ. No. 09-00051 ACK-LEK, 2010 WL 157486, at *5 (Jan. 15. 2010). "The purpose of a duty to defend is to require the indemnitor to defend at its own cost any claims which *potentially* fall within the agreement." <u>Id.</u>, 2010 WL 157486, at *6 (citing <u>First Ins. Co. of Haw., Inc. v. State</u>, 665 P.2d 648, 652 (Haw. 1983) ("An insurer's duty to defend arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy.")). The duty to defend "is purely contractual and depends, in the first instance, on the language of the particular policy involved." <u>First Ins. Co. of Haw., Inc.</u>, 665 P.2d at 652; <u>Commerce & Indus. Ins. Co. v. Bank of Haw.</u>, 832 P.2d 733, 735 (Haw. 1992) (stating that the court must look to the language of the particular contract involved to determine the scope of the duty to defend). Under the complaint allegation rule, the duty to defend is construed broadly and is triggered when "any of the allegations in the complaint potentially include conduct" that is covered by the indemnity contract. <u>Pancakes of Haw.</u>, 944 P.2d at 89-91; <u>see also</u>, <u>Shaughnessy</u>, 2010 WL 157486, at *5 (holding that the duty to

13

defend is triggered "whenever the allegations of the complaint raise the possibility that the indemnitor may have a duty to defend").

First, the Court must examine the language of the contract to determine the scope of Seven Signatures' duty to indemnify and defend. Paragraph 4 provides that Seven Signatures has a duty to indemnify and defend Irongate "from claims and lawsuits asserted by Seven Signatures" that are "based on claims that have been released." MSA ¶ 4. The provision also provides that Seven Signatures releases "all claims, whether known or unknown, against [Irongate] related to units that are terminated by way of this Agreement." MSA ¶ 4. Reading these provisions together, Seven Signatures has a duty to defend Irongate against lawsuits asserted by Seven Signatures based on claims related to units that are terminated by way of the MSA.

Second, to determine whether this duty has been triggered, the Court must examine the allegations of the complaint. Here, Seven Signatures did not file a complaint, but instead filed Petition for Order Compelling Mediation/Arbitration and a Memorandum in Support of Petition for Order Compelling Mediation/Arbitration. See Docket No. 1-1, Ex. 1 to Irongate's Notice of Removal. After the case was removed to this court, Seven Signatures filed a Motion to Compel Arbitration, which incorporated by reference and attached the previously filed

14

Petition and Memorandum.  See Docket Nos. 7-1 at 2, 7-2, and 7-3.
In the Petition, Seven Signatures asked the court to compel
Irongate to participate in arbitration/mediation under the Sales
Contract.  Docket No. 1-1 at 2.  Seven Signatures acknowledged
that the parties entered into the MSA and argued that the MSA
allowed an extension of the closing date for Unit 3509.[4]  See
Docket No. 1-1 at 4.  Seven Signatures further alleged that
"Irongate unilaterally terminated the Sales Contract for Unit
3509."  See Docket 1-1 at 4; see also Docket No. 7-3 at 4.  In
its Opposition, Seven Signatures now asserts that its duty to
defend has not yet been triggered because there has been no
judicial determination that Unit 3509 was "terminated" under the
MSA.  Opp. at 7.  Seven Signatures argues that the court merely
found that Unit 3509 was "terminable" under the MSA.  Id.
Irongate responds that the court determined that the Sales
Contract for Unit 3509 was "terminable at Irongate's sole
discretion" and that Irongate had tendered certain funds to Seven
Signatures "as required for termination."  Reply at 3-4 (citing
Jan. 18 Order at 11-12).

Based on allegations in the Petition and Motion to
Compel, including Seven Signatures' statement that "Irongate
unilaterally terminated the Sales Contract for Unit 3509," the

---

[4]  This argument was ultimately rejected by the court in its
January 18 Order.  See Jan. 18 Order at 24.

Court finds that the allegations "potentially include conduct" that is covered by the indemnity provision in the MSA. <u>See</u> <u>Pancakes of Haw.</u>, 944 P.2d at 91. Requiring a judicial finding of termination under the MSA conflicts with the nature of the duty to defend. Under Hawaii law, the duty to defend is triggered when the possibility of indemnification exists. <u>See</u>, <u>e.g.</u>, <u>Sentinel Ins. Co. v. First Ins. Co. of Haw.</u>, 875 P.2d 894, 907 (Haw. 1994) (stating that "[t]he mere fact that the answers to those questions [of whether the duty to defend was triggered] were not then and are not presently conclusively answered demonstrates that, based on the allegation in the underlying action, it was possible that the [plaintiff] would be entitled to indemnification under the [relevant] policies" and affirming the lower court's order granting motion for summary judgment on the issue of duty to defend). Given the broad construction required under Hawaii law, the Court concludes that Seven Signature's duty to defend under the MSA was triggered when Seven Signatures filed its Petition. Accordingly, Irongate has a contractual basis for an award of attorneys' fees under Hawaii Revised Statutes section 607-14.

## B.  Prevailing Party Status

Irongate prevailed on its motion for summary judgment and judgment was issued in its favor. Because any dismissal that results in judgment is sufficient to support an award for

attorneys' fees under Hawaii law, see Kona Enters., 229 F.3d at 883, the Court concludes that Irongate is the "prevailing party" for purposes of section 607-14.  See also Blair v. Inq, 31 P.3d 184, 189 (Haw. 2001) ("a defendant who succeeds in obtaining a judgment of dismissal is a prevailing party for the purpose of fees under HRS § 607-14.").

### C.  Calculation of Reasonable Attorneys' Fees

Hawaii courts calculate the reasonableness of attorneys' fees based on a method that is nearly identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See DFS Grp. L.P. v. Paiea Props., 131 P.3d 500, 505 (Haw. 2006).  Under the lodestar method, the court must determine a reasonable fee by multiplying the number of hours reasonably expended by a reasonable hourly rate.  See id. 505-06.  In addition, the court may consider additional factors including the novelty of the questions involved and charges for similar service in the community.  See Chun v. Bd. of Trs. of Emps.' Ret. Sys. of Haw. 106 P.3d 339, 358 (Haw. 2005); Chun v. Bd. of Trs. of Emps.' Ret. Sys. of Haw., 992 P.2d 127, 137 (Haw. 2000).  Irongate requests the following attorneys' fees for work performed by its counsel:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Terence O'Toole | 29.90 | $500.00 | $14,950.00 |
| Sharon Lovejoy | 0.50 | $425.00 | $212.50 |

17

| | | | |
|---|---|---|---|
| Andrew Lautenbach | 89.90 | $275.00 | $24,722.50 |
| Shyla Cockett | 2.60 | $250.00 | $650.00 |
| Connie Gardner | 5.40 | $135.00 | $729.00 |
| SUBTOTAL | | | $41,264.00 |
| General Excise Tax | | 4.712% | $1,944.34 |
| **TOTAL** | | | **$43,208.34** |

See Mem. in Supp. of Mot. at 10; Aff. Of Terence J. O'Toole submitted in support for Mot. ("O'Toole Aff."). Additionally, Irongate seeks non-taxable costs.[5] Mem. in Supp. of Mot. at 13.

## 1. Reasonable Hourly Rate

Hawaii courts consider the reasonable hourly rate in a manner similar to the traditional lodestar formulation, and some Hawaii state courts have considered federal law in determining a reasonable hourly rate. See, e.g., Cnty. of Haw. v. C & J Coupe Family Ltd. P'ship, 208 P.3d 713, 720 (Haw. 2009). The Court finds that federal case law regarding the determination of a reasonable hourly rate is instructive in this case. In assessing whether an hourly rate is reasonable, a court "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and

---

[5] In its Motion, Irongate includes the cost for support staff in its request for attorneys' fees. See Mem. in Supp. of Mot. at 10; O'Toole Aff. ¶ 11. Irongate did not provide any information regarding the skill and experience of its staff to support the rate requested or any details regarding the hours spent. Accordingly, the Court finds that support staff costs are more appropriately examined as a non-taxable cost, not as part of the request for attorneys' fees.

reputation." <u>Webb v. Ada Cnty.</u>, 285 F.3d 829, 840 (9th Cir. 2002) (citing <u>Chalmers v. City of L.A.</u>, 796 F.2d 1205, 1210-11 (9th Cir. 1986)); <u>see also</u> <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). In addition to their own statements, the fee applicant is required to submit additional evidence that the rate charged is reasonable. <u>Jordan v. Multnomah Cnty.</u>, 815 F.2d 1258, 1263 (9th Cir. 1987).

In support of the rates requested, Irongate submitted a declaration from Paul Alston, an order of the Circuit Court of the First Circuit State of Hawaii, and a list of law firms in Honolulu that was published by the *Pacific Business News* for 2010. O'Toole Aff. ¶¶ 13, 19-20, Exs. 8, 9, 10. Mr. Alston's declaration states that the $500 per hour rate requested by Mr. O'Toole is reasonable given his experience. <u>Id.</u> Ex. 8. The order of the Hawaii Circuit Court states generally that the rates charged by Irongate's counsel are reasonable. <u>Id.</u> Ex. 9. The list shows that the hourly rates charged by the law firms listed range between $120 and $300 for associates and between $155 and $595 for partners. <u>Id.</u> Ex. 10.

As detailed below, based on the Court's familiarity with the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill, and

reputation, as well as with other prior attorneys' fee awards in this district, the Court finds that the rates requested by Irongate's counsel are excessive and adjusts the rates accordingly.

### a. A Reasonable Hourly Rate for Mr. O'Toole is $350.

Mr. O'Toole has over thirty-five years of experience. O'Toole Aff. ¶ 13. Irongate requests $500 per hour for the work performed by Mr. O'Toole. <u>Id.</u> ¶ 11. In other cases, the court has awarded $350 per hour to attorneys with similar skill and experience. <u>See</u>, <u>e.g.</u>, <u>Shea, et al. v. Kahuku Housing Found.,</u> <u>Inc., et al.</u>, Civil No. 09-00480 LEK-LEK, 2011 WL 1261150, at *6- *7 (D. Haw. Mar. 31, 2011) (finding $350 was a reasonable rate for an attorney with nearly forty years experience). Based on these prior awards, the Court finds that the requested rate of $500 per hour is excessive and finds that $350 per hour is reasonable.

### b. A Reasonable Hourly Rate for Ms. Lovejoy is $250.

Ms. Lovejoy has over twenty years of litigation experience. O'Toole Aff. ¶ 14. Irongate requests a rate of $450 per hour for the work performed by Ms. Lovejoy. <u>Id.</u> Based on a review of the rates generally awarded for attorneys with comparable experience, the Court finds that the requested rate is excessive and a rate of $250 is reasonable for Ms. Lovejoy. <u>See</u> <u>Donkerbrook v. Title Guar. Escrow Servs., Inc.</u>, Civ. No. 10-00616

LEK–RLP, 2011 WL 3649539, at *8-*9 (D. Haw. Aug. 18, 2011); <u>JJCO, Inc. v. Isuzu Motors Am., Inc.</u>, Civ. No. 08-00419 SOM-LEK, 2010 WL 3001924, at *9-*10 (D. Haw. July 30, 2010).

**c. A Reasonable Hourly Rate for Mr. Lautenbach is $165.**

Mr. Lautenbach has approximately seven years of experience in California and Hawaii. O'Toole Aff. ¶ 15. Irongate requests a rate of $275 per hour for the work performed by Mr. Lautenbach. <u>Id.</u> The Court find this rate to be excessive because the typical range of rates awarded in other cases for associates with similar skill and experience is between $150 and $175 per hour. <u>See</u>, <u>e.g.</u>, <u>Shea</u>, 2011 WL 1261150, at *7 (finding that $150 per hour is reasonable for an attorney with almost seven years experience)**;** <u>Gunderson, et al. v. Mauna Kea Props., Inc., et al.</u>, Civil No. 08-00533 KSC, slip op. at 22-23 (D. Haw. May 9, 2011) (awarding $175 per hour for attorneys with seven years of experience). This Court finds that $165 is a reasonable hourly rate for Mr. Lautenbach.

**d. A Reasonable Hourly Rate for Ms. Cockett is $150.**

Ms. Cockett was admitted to the bar in 2007. O'Toole Aff. ¶ 16. Irongate requests a rate of $250 per hour for the work performed by Ms. Cockett. <u>Id.</u> The Court find the rate requested to be excessive. The range of rates typically awarded for associates with similar experience is between $125 and $150

21

per hour.  See, e.g., Donkerbrook, 2011 WL 3649539, at *8
(finding that $150 per hour is reasonable for attorneys with more
than four years of experience); Shea, 2011 WL 1261150, at *7
(finding that $125 per hour is reasonable for an attorney
admitted to practice in 2007).  This Court finds that $150 is a
reasonable hourly rate for Ms. Cockett.

### e.  A Reasonable Hourly Rate for Ms. Gardner is $85.

Ms. Gardner has approximately seventeen years
experience working as a paralegal.  O'Toole Aff. ¶ 17.  Based on
awards in prior cases for paralegals with lengthy experience, the
Court find the requested rate to be excessive.  See, e.g.,
Diamond Resort Hawaii Corp. v. Bay West Kailua Bay, LLC, CV No.
10-00117 DAE BMK, 2011 WL 5079580, at *1 (D. Haw. Oct. 25, 2011);
Donkerbrook, 2011 WL 3649539, at *7; Ko Olina Dev., LLC v. Centex
Homes, Civil No. 09-00272 DAE-LEK, 2011 WL 1235548, at *10-*11
(D. Haw. March 29, 2011).  The Court finds that $85 is a
reasonable hourly rate for Ms. Gardner.

### 2.  Hours Reasonably Expended

For the same reasons as those discussed above, the
Court finds that federal case law regarding the determination of
reasonable hours spent is instructive in this case.  Irongate
bears the burden of documenting the appropriate hours expended in
the litigation and must submit evidence in support of those hours
worked.  See Smothers v. Renander, 633 P.2d 556, 563 (Haw. Ct.

App. 1981) (stating that it is the prevailing party's burden to show that the fee is for services reasonably and necessarily incurred).  Seven Signatures then has the burden of rebuttal that requires submission of evidence challenging the accuracy and reasonableness of the hours charged or the facts asserted by the fee applicant in its affidavits.  See Gates, 987 F.2d at 1397-98.  Attorneys' fees pursuant to section 607-14 are not presumptive and do not require a detailed explanation of the rationale underlying the reduction in the amount of fees awarded if there is support in the record.  Ranger Ins. Co. v. Hinshaw, 79 P.3d 119 (Haw. 2003).

### a.  Excessive and Unnecessary Time

The Court may deduct time requested that is "excessive, redundant, or otherwise unnecessary."  Gates, 987 F.2d at 1397 (quoting Hensley, 461 U.S. at 433-34).  First, Seven Signatures argues that this case was a "simple, straight forward petition to compel arbitration" and that Irongate filed an unnecessary motion to dismiss or in the alternative motion for summary judgment.  Opp. at 13.  Based on the Court's review of the record in this case, including the request for supplemental briefing, the Court finds that Seven Signatures' argument is not persuasive.  The Court has reviewed Irongate's requested time related to the motions filed in this case and finds that the time requested is reasonable.

Second, Seven Signatures that the time expended by Ms. Cockett and Ms. Lovejoy was unnecessary. Opp. at 21. Irongate does not address this issue in its Reply. From the billing records, it appears that Ms. Lovejoy had earlier involvement in the case, but only billed for her work on the motion for summary judgment. See Ex. 7 to O'Toole Aff. at 3-5. The Court finds that the time requested for work performed by Ms. Lovejoy is reasonable. However, there is no indication in the billing records or in a review of the motion papers how the research conducted by Ms. Cockett was necessary for this case. Accordingly, the Court finds that the 2.60 hours requested for work performed by Ms. Cockett is unnecessary and deducts that time from the request.

### b. Duplicative Time

As a general rule, the Court does not permit more than one attorney to bill for attending: (1) a meeting between co-counsel; (2) a client meeting; or (3) a meeting with opposing counsel. Ko Olina, 2011 WL 1235548, at *12 (quoting Nat'l Comm'n for Certification of Crane Operators v. Ventula, Civ. No. 09-00104 SOM-LEK, 2010 WL 2179505, at *5 (D. Haw. Apr. 30, 2010)). In such a situation, the Court typically deducts the time spent by the lowest-billing attorney. Id.

Here, there are several entries by both Mr. O'Toole and Mr. Lautenbach that appear to be for attending the same

24

conference or call.  These time entries raise concerns for two
reasons.  First, as noted above, the Court generally only allows
fees for one attorney.  Second, the time charged by the two
attorneys for the same events varies significantly.  The time
entries at issue are detailed below:

| DATE | ATTORNEY | TIME | DESCRIPTION |
|---|---|---|---|
| 9/13/11 | Lautenbach | 0.30 | Telephone call to Mr. Schraff |
| 9/13/11 | O'Toole | 0.90 | Conference call with Mr. Schraff to discuss background and status of litigation, including motion to dismiss arbitration |
| 9/14/11 | Lautenbach | 0.70 | Call with client re status and strategy |
| 9/14/11 | O'Toole | 1.10 | Conference call with Messrs. Federman and Grosfeld to review background and documents |
| 9/23/11 | Lautenbach | 0.20 | Teleconference with client re motion to dismiss petition to compel arbitration |
| 9/23/11 | O'Toole | 0.50 | Telephone conference with Mr. Lautenbach and clients re filing motion to dismiss |
| 11/19/11 | Lautenbach | 0.30 | Conference with Mr. O'Toole re strategy re same |
| 11/19/11 | O'Toole | 0.70 | Conference with Mr. Lautenbach re opposition to Seven Signatures motion and strategy |
| 11/28/11 | Lautenbach | 0.50 | Teleconference with Mr. O'Toole and client |
| 11/28/11 | O'Toole | 0.30 | Conference call/update with Mr. Federman |

Irongate responds that these discrepancies merely
reflect differences in the manner in which different attorneys

account for their time. Reply at 8 n.3. After careful review of the time entries, the Court is not persuaded by Irongate's argument. The Court reduces the fees requested to deduct the time spent by Mr. Lautenbach, the lower-billing attorney, and also reduces the time requested for Mr. O'Toole to reflect the lower amount of time recorded by counsel. The Court deducts 2.00 hours requested for work performed by Mr. Lautenbach and reduces the hours requested for work performed by Mr. O'Toole by 1.70 hours.

Seven Signatures also challenges the reasonableness of the time requested by Mr. O'Toole in preparation for the hearing on the motion to compel and the motion for summary judgment because Mr. Lautenbach argued the motions at the hearing. Opp. at 18-19. Two attorneys may recover fees for their appearances at court proceedings when it is reasonable and necessary for a "second chair" to appear with lead counsel. Ko Olina, 2011 WL 1235548, at *12. Although the Court finds that it was reasonable for two attorneys to appear for the hearing, the Court finds that the time requested by Mr. O'Toole related to preparation for the hearing is excessive compared to the time expended by Mr. Lautenbach who actually argued the motions. The Court deducts 2.00 hours requested by Mr. O'Toole related to the preparation for the hearing.

### 3. Total Lodestar Award

The Court has considered the other arguments raised by Seven Signatures regarding Irongate's requested fees and finds that the rest of the time requested is reasonable. Based on the foregoing, the Court FINDS that Irongate has established the appropriateness of an award of attorneys' fees as follows:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Terence O'Toole | 26.20[6] | $350.00 | $9,170.00 |
| Sharon Lovejoy | 0.50 | $250.00 | $125.00 |
| Andrew Lautenbach | 87.90[7] | $165.00 | $14,503.50 |
| Connie Gardner | 5.40 | $85.00 | $459.00 |
| SUBTOTAL | | | $24,257.50 |
| General Excise Tax | | 4.712% | $1,143.01 |
| TOTAL | | | **$25,400.51** |

Accordingly, the Court RECOMMENDS that the District Judge award Irongate $25,400.51 in attorneys' fees.

### D. Twenty-Five Percent Limitation

Section 607-14 limits the award of attorneys' fees to twenty-five percent of the judgment. Haw. Rev. Stat. § 607-14. The limit is determined based on "the amount sued for if the defendant obtains judgment." <u>Id.</u> However, the Hawaii Supreme

---

[6] 29.90 - 1.70 (time entry discrepancies) - 2.00 (duplicative time) = 26.20

[7] 89.90 – 2.00 (duplicative time) = 87.90

Court has stated that the twenty-five percent cap does not apply in cases that involve "only an adjudication of rights in which no monetary liability is at issue." DFS Grp., 131 P.3d at 504 (quoting Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc., 575 P.2d 869, 880 (Haw. 1978)); see also Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 35 (Haw. 1992) ("if no money damages are sought or awarded, as in a complaint for declaratory judgment, there is no monetary amount on the basis of which to calculate the twenty-five percent statutory ceiling for attorneys' fees"). Here, Seven Signatures' Petition sought an order compelling arbitration or mediation. Therefore, the Court finds that section 607-14's cap does not apply.

## III. Non-taxable Costs

Although section 607-14 does not expressly authorize an award of non-taxable costs in addition to attorneys' fees, Hawaii courts have awarded non-taxable costs pursuant to section 607-14. See Ko Olina, 2011 WL 1235548, at *14 (citing Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 87 Haw. 37, 52, 951 P.2d 487, 502 (Haw. 1998)). Irongate requests the following non-taxable costs: staff support[8] costs of $1,218.00; Federal Express charges of $36.30; local deliveries charges for $30.71; and Public Access to Court Electronic Records ("PACER") fees of

---

[8] As noted above, the Court considers these staff support costs as part of the non-taxable costs, not as part the attorneys' fees requested by Irongate.

$8.16. Mem. in Supp. of Mot. at 10, 12-13. Seven Signatures objects to all of Irongate's requested non-taxable costs. Opp. at 21-23.

Regarding the costs requested for support staff, as a general rule, "[c]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." <u>JJCO</u>, 2010 WL 3001924, at *12. Irongate's counsel states that pursuant to an agreement with Irongate, "staff support charges for this matter were not encompassed by the attorneys' hourly rate as overhead, but were instead charged separately." O'Toole Aff. ¶ 18; see <u>also</u>, Mem. in Supp. of Mot. at 10 n.3. Although a line item charge for staff support is reflected in the invoices submitted, no description is provided regarding the work performed. <u>See</u> O'Toole Aff. Ex. 6. Irongate does not provide any authority to support its request for costs related to support personnel and does not explain how its hourly rates were otherwise discounted to reflect this separate charge. In other cases that presented unique circumstances, such as large class actions that required extensive administrative support, the court has allowed recovery of costs for support personnel for conducting tasks that were not clerical or ministerial in nature. <u>See</u>, <u>e.g.</u>, <u>Donkerbrook</u>, 2011 WL 3649539, at *8 (allowing $50 per hour for legal secretaries and clerks in a class action settlement); <u>Blake v. Nishimura</u>, Civil No. 08-00281 LEK, 2010 WL

29

1372420 at *7-*9 (awarding $50 per hour for non-clerical or ministerial tasks performed by document analysts in class action).  Here, there is no indication that the work performed by the support personnel was anything other than clerical and ministerial in nature.  Accordingly, given the lack of authority for such a request, the Court finds that these costs are not reasonable and are not recoverable as non-taxable costs.

Regarding the Federal Express and local delivery charges, the Court finds that these costs were reasonable and necessary non-taxable expenses.  However, given the free access to documents filed in this case provided to registered counsel, the Court finds that the $8.16 for PACER costs requested were not necessary and are not reasonable.  In total, the Court finds that Irongate is entitled to $67.01 for non-taxable costs.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court FINDS AND RECOMMENDS that Irongate's Bill of Costs be GRANTED IN PART AND DENIED IN PART and its Motion be GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS that Irongate be awarded $482.93 in costs, $25,400.51 in attorneys' fees, and $67.01 in non-taxable costs, for a total award of $25,950.45.

///

///

///

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, APRIL 18, 2012



_____
Richard L. Puglisi
United States Magistrate Judge


**SEVEN SIGNATURES V. IRONGATE, CIVIL NO. 11-00500 JMS-RLP; SECOND
AMENDED FINDINGS AND RECOMMENDATION REGARDING RESPONDENT
IRONGATE'S BILL OF COSTS AND MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND NON-TAXABLE COSTS**